IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRAVIS SHANE BAKER,

    Plaintiff,

v.                                                Civil No. 6:14-cv-1406-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff Travis Shane Baker ("Plaintiff") seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. In his pleadings, Plaintiff alleges error with regard to the Commissioner's assessment of his residual functional capacity, the opinions of his treating and consulting physicians, and his failure to re-contact the treating medical sources to determine if additional needed information is readily available. Upon review, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

### I.    Factual and Procedural Background

Plaintiff's health issues date back to July 2007, when Plaintiff was admitted to the Kansas Heart Hospital with severe chest pain. Plaintiff was discharged with a diagnosis of acute myocardial infraction, anxiety, and depression. During a follow up visit with Dr. Gregory Duick, MD the doctor indicated Plaintiff appeared to be seeking disability and opined that from a cardiac standpoint, he was clinically stable.

Plaintiff sought healthcare treatment several times over the six years since the onset of his conditions. While he most frequently saw Basuviah Shanker, MD for mental health complaints and Brenda Brennan, ARNP for physical complaints, Plaintiff saw numerous other healthcare providers as well. Evaluation results of Plaintiff's physical and mental issues varied. For example, in September 2012, Charles T. Hitchcock, MD reviewed Plaintiff's available medical records and opined that Plaintiff could perform medium work. On November 15, 2012, Ms. Brennan completed a Medical Source Statement concluding Plaintiff to be in poor physical health. On December 12, 2012, Riaz Baqir, MD conducted a physical examination of Plaintiff and found no signs of physical distress. Dr. Hitchcock and Dr. Baqir's opinions differed greatly from that of Ms. Brennan's.

In addition to the variation of medical opinions regarding Plaintiff's physical health, opinions regarding his mental health varied as well. In March 2011, social worker Brian Cook conducted a psychological examination of Plaintiff, the results of which were inconclusive due to the Plaintiff's interference with the testing. Approximately one year later in April 2012, Elissa Lewis, PhD, opined that Plaintiff could perform simple work requiring minimal interaction with others. Subsequently, in June 2012, Stanley Mintz, PhD opined that Plaintiff could perform basic types of employment. In September 2012, Charles Frantz, PhD affirmed Dr. Lewis' opinion. On February 5, 2013, Dr. Shanker completed a mental Medical Source Statement concluding Plaintiff had substantial mental functional limitations. On June 4, 2013, Melvin Berg, PhD completed a mental Medical Source Statement concluding Plaintiff had very few mental functional limitations. Of all the medical opinions regarding Plaintiff's mental health, Dr. Shanker was the only health care provider to indicate that Plaintiff had substantial mental limitations.

Plaintiff filed for SSI on December 27, 2011, alleging disability beginning August 28, 2008. His claim was denied initially on April 11, 2012, and again upon reconsideration on September 5, 2012. Plaintiff subsequently filed a request for an administrative hearing, which took place on March 20, 2013 by way of video hearing before Administrative Law Judge John B. Langland. Plaintiff, represented by counsel, attended the video hearing. Robin Cook, an impartial Vocational Expert, also appeared at the hearing.

At the time of the hearing, Plaintiff was forty-two-year-old single man residing with his mother and caring for himself and his pet. Plaintiff testified that he last worked four or five years earlier as a food preparer at McDonald's, but left his position because he had trouble remembering how to do the work and the employer cut his hours to the point he did not think it worthwhile to continue his employment. When asked why he could not return to work, Plaintiff claimed he applied for other jobs within walking distance of his home, but never received any offers of employment. Additionally, he reported that he had an inability to work because of undiagnosed pain in his back and numbness in his extremities. Plaintiff indicated that he had been diagnosed with anxiety and was taking medication to control his symptoms. Plaintiff also testified that he was depressed, tired, and fatigued.

In describing his daily activities, Plaintiff indicated that he lies down about one-fourth to one-half of the day. He spends time watching television and occasionally fishing. Plaintiff stated he does household chores with rest periods; he will mow the yard for about 5 to 10 minutes, but then must rest. Plaintiff reported he could drive, but had no vehicle and no driver's license because it was suspended due to a prior conviction of driving under the influence.

In addition to Plaintiff's testimony, ALJ Langland also sought the testimony of VE Cook to determine how, if at all, Plaintiff's alleged impairments and limitations affected his ability to

return to the workforce. VE Cook related Plaintiff's previous work with oil wells as a Construction Worker II, involving heavy industrial work. Based upon Plaintiff's testimony and his own review of the entire record, ALJ Langland asked the VE a series of hypothetical questions that included varying degrees of limitation on complexity of tasks, stressful situations, and interaction with others. Although the VE indicated that, with the restrictions as set forth by the ALJ, the hypothetical individual could not perform Plaintiff's past relevant work, the VE stated there was other work in the local and national economy that an individual with such limitations could perform.

During cross-examination, Plaintiff's counsel questioned whether, in addition to the limitations set forth by the ALJ, the hypothetical individual could perform other work if he needed frequent unscheduled breaks. The VE responded in the negative. Additionally, Plaintiff's counsel questioned whether, aside from the limitations set forth by ALJ Langland's hypothetical person, if an individual who can do no more than occasional reaching, handling, and fingering and carry less than ten pounds, would be able to perform competitive work. The VE responded in the negative.

ALJ Langland issued his decision on August 12, 2013, finding that Plaintiff suffered from generalized anxiety disorder, dysthymia, avoidant personality disorder, history of substance abuse, hyperlipidemia, history of myocardial infraction, and coronary artery disease. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Langland concluded that Plaintiff retained the residual functional capacity to perform less than the full range of "medium work," as defined in 20 C.F.R. 416.967(c). Specifically, ALJ Langland concluded the Plaintiff can: (1) lift and carry up to 50

pounds occasionally and 25 pounds frequently, (2) stand or walk about 6 hours and sit for at least 6 hours out of an 8-hour workday, (3) perform tasks not involving exposure to temperature extremes, (4) perform simple, unskilled work involving routine, repetitive tasks within a low-stress environment, (5) have occasional interaction with supervisors and co-workers, but no interaction with members of the general public, and (6) can tolerate only minor, infrequent changes within the workplace.

ALJ Langland therefore concluded that Plaintiff had not been under a disability, as that term is defined in the Social Security Act, since December 27, 2011, the date the application was filed. On July 6, 2015, Plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Plaintiff's exhaustion of all administrative remedies, his claim is now ripe for review.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the

[Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further, cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's

residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III.     Analysis

In his pleadings, Plaintiff alleges that ALJ Langland erred by improperly evaluating the opinion evidence of record and thus failed to properly assess Plaintiff's residual functional capacity.  More specifically, Plaintiff argues that ALJ Langland: (1) failed to assign appropriate weight to the opinion of Plaintiff's treating health care providers; and (2) failed to re-contact the treating medical sources to determine if additional needed information is readily available. Plaintiff's arguments fail.

**A.     Residual Functional Capacity Generally**

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

**B.     Assigning Controlling Weight**

Plaintiff first argues that ALJ Langland failed to properly assign controlling weight to his treating health care providers. As a general rule, an ALJ must consider and weigh all medical opinions. *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Social Security regulations identify three types of "acceptable medical sources:" (1) treating sources, i.e., medical sources who have treated or evaluated the claimant or who have had "an ongoing treatment relationship" with the claimant; (2) non-treating sources, i.e., medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3)

non-examining sources, i.e., medical sources who render an opinion without examining the claimant. *See* 20 C.F.R. § 404.1527; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). The Commissioner generally gives more weight to the opinions of examining sources than to opinions of non-examining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives the most weight to treating sources because

> These sources are likely to be the medical professional most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examination or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). The Commissioner will give the opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ must state "specific, legitimate reasons" for declining to give controlling weight to the opinion of a treating physician. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

Absent assigning controlling weight, an ALJ must consider the six specific factors set out in 20 C.F.R. § 404.1527(c)(1)-(6) in determining how much weight to accord the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship including the treatment provide and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). Although there is no requirement that an ALJ conduct a factor-by-factor analysis, his opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and quotation marks omitted). When an ALJ completely rejects an opinion of a treating source, he must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1300. Failure to apply the correct legal standard in weighing the opinion of a treating physician may result in a reversal and remand. *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).

Here, ALJ Langland carefully reviewed the medical record. With respect to Dr. Shanker's summary mental evaluations ALJ Langland wrote:

> Included in the record is a medical source statement completed by Dr. Shanker… reporting out of eight areas of function, the claimant had five areas with marked limitations and three areas with extreme limitation (Exhibit B29F). However, this is given little weight as these limitations are not reflected in the evidence. Dr. Shanker has essentially seen the claimant for 15 minutes four times a year for medication without reported evidence of any significant concerns.

(Tr. 647-48) (Tr. 39). With respect to Ms. Brennan's summary physical evaluations ALJ Langland wrote:

> Although there was no objective evidence to account for the claimant's alleged numbness and weakness, a medical source statement was completed… However, this is given little weight as there is no support for these limitations in the medical evidence. It appears to be based on the claimant's complaints rather than objective evidence of actual physical impairment.

(Tr. 541 and 543). The court finds no error in the decision to give reduced weight to the opinions offered by both Dr. Shanker and Ms. Brennan. The record includes objective evidence suggestive of a functional capacity much greater than the extreme restrictions set forth in both Dr. Shanker and Ms. Brennan's opinions.

Dr. Shanker's own treatment notes generally indicated that Plaintiff's anxiety remained fairly stable (Tr. 431-32, 434, 504, 525, and 611). Additionally, Dr. Shanker noted several times Plaintiff's commentary on seeking disability (Tr. 432, 434, and 611). ALJ Langland also reviewed Dr. Shanker's opinion in the context of the opinions of other medical sources, and addressed in detail Plaintiff's mental health record. ALJ Langland gave partial weight to the opinion of Mr. Cook that the claimant's avoidant personality interfered with his employability because it is consistent with the Plaintiff's known personality disorder. However, Mr. Cook's determination regarding employability is not credited at all because it is not within his purview or expertise. Dr. Mintz's opinion that the Plaintiff is limited by his mental illness, but not completely prevented from basic types of work, is given substantial weight because this opinion is consistent with the record as a whole. (Tr. 520). Similarly, ALJ Langland assigned substantial weight to the opinion of Dr. Berg finding through objective psychological testing, that the Plaintiff had moderate limitations. (Tr. 649-51). Substantial weight was also given to Dr. Lewis and Dr. Charles Fantz's finding moderate limitations in social functioning and concentration because these sources have program knowledge and the opinions are consistent with other findings. (Tr. 104-15 and 151-66).

A thorough review of ALJ Langland's written decision reveals that, while he cited to Ms. Brennan's reports and findings several times throughout his decision, he did not assign controlling weight to Ms. Brennan's opinion because it lacked medical evidence and seemed primarily based on Plaintiff's subjective complaints of numbness and weakness in his extremities. (Tr. 547-48, 567-68, 592-93, and 595-98). In fact, Ms. Brennan ordered numerous x-rays and catatonic scans to identify the cause of Plaintiff's alleged numbness and weakness, but none of the tests identified any abnormalities that would cause the alleged impairments. (Tr. 591

and 594-95). Furthermore, the record does not indicate any significant physical health concerns. (Tr. 415-28, 456-57, and 540-41).

Again, the issue is not whether the court would reach the same conclusion as to the ultimate issue of disability, but whether ALJ Langland's decision is supported by substantial evidence and whether his decision was sufficiently clear to allow the court to understand the reasons for a particular weight assigned to the opinion of the claimant's treating physician. *Watkins*, 350 F.3d at 1300. Applying this standard, the court finds no error.

### C.   Re-contact Treating Medical Sources

Finally, Plaintiff argues that ALJ Langland erred in failing to re-contact the treating medical sources to determine if additional needed information is readily available. ALJ Langland noted the existing and substantial medical record, and obtained additional, consultative medical evidence. ALJ Langland had an adequate record with which to resolve the issues in the action, including Dr. Shanker and Ms. Brennan's treatment notes, which document the Plaintiff's stable mental condition and lack of medically determinable physical impairment, respectively. ALJ Langland had a sufficient basis for resolving the claim and articulated the reasons for his decision.

**IT IS THEREFORE ORDERED** this 5th day of November, 2015 that Plaintiff's appeal is hereby denied.

s/ J. Thomas Marten

J. THOMAS MARTEN, JUDGE